IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JOSE B.,[1] | ) |
| Plaintiff, | ) ) ) |
| v. | ) No. 24 C 10968 ) ) Magistrate Judge Gabriel A. Fuentes |
| FRANK BISIGNANO, Commissioner of Social Security,[2] | ) ) ) ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER[3]

Before the Court is Jose B.'s memorandum requesting the Court reverse and remand the Administrative Law Judge's ("ALJ") decision denying his application for disability insurance benefits ("DIB") (D.E. 17), Defendant's memorandum in support of his motion for summary judgment to affirm the ALJ's decision (D.E. 20), and Plaintiff's reply (D.E. 24).

### I.    Procedural History

Plaintiff applied for DIB on March 22, 2022, alleging a disability onset date of September 16, 2020. (R. 15.) The ALJ held a hearing on January 17, 2024, and issued a written decision on May 15, 2024, denying Plaintiff's application and finding him not disabled under the Social

---

[1] The Court in this order is referring to Plaintiff by his first name and first initial of his last name in compliance with Internal Operating Procedure No. 22 of this Court. To the extent the Court uses pronouns in this order, the Court uses those pronouns used by the parties in their memoranda.

[2] The Court substitutes Frank Bisignano for his immediate predecessor, Leland Dudek, as the proper defendant in this action pursuant to Federal Rule of Civil Procedure 25(d) (a public officer's successor is automatically substituted as a party).

[3] On October 28, 2024, by consent of the parties and pursuant to 28 U.S.C. § 636(c) and Local Rule 73.1, this case was reassigned to this Court for all proceedings, including entry of final judgment. (D.E. 6.)

Security Act (the "Act") from his alleged onset date of September 16, 2020, through the date of the opinion, May 15, 2024. (R. 15-39.)[4] This appeal is of that final decision.

## II. The ALJ Decision

The ALJ applied the Social Security Administration's ("SSA") five-step sequential evaluation process to Plaintiff's claim. At Step One, the ALJ found Plaintiff had not engaged in substantial gainful activity since his alleged onset date of September 16, 2020. (R. 17.) At Step Two, the ALJ determined that Plaintiff had the severe impairments of degenerative disc disease of the cervical spine, degenerative disc disease of the lumbar spine, degenerative joint disease of the left knee, obesity, and anxiety. (R. 18.) At Step Three, the ALJ found that Plaintiff did not have an impairment or combination of impairments which meet or medically equal any Listing. (R. 18-22.) The ALJ assessed Plaintiff as having the residual functional capacity ("RFC") to perform light work with additional limitations, in relevant part, as follows:

> [Claimant] can perform fine and gross manipulation frequently but not constantly and is incapable of forceful grasping or torquing. . . . The claimant is limited to working in non-hazardous environments, i.e., no driving at work, operating moving machinery, working at unprotected heights, and he should avoid concentrated exposure to unguarded hazardous machinery. . . . The claimant cannot perform work requiring a specific production rate, such as assembly line work, but can tolerate end of day quotas.

(R. 22.) At Step Four, the ALJ found that Plaintiff could not perform his past relevant work as a truck driver. (R. 37.) Based on the vocational expert's testimony at the hearing, at Step Five, the ALJ determined that with his RFC, Plaintiff would be able to perform a significant number of jobs in the national economy, and thus that he was not disabled under the Act. (R. 38-39.)

---

[4] The Appeals Council subsequently denied review of the opinion (R. 1), making the ALJ's decision the final decision of the Commissioner. *Bertaud v. O'Malley*, 88 F.4th 1242, 1244 (7th Cir. 2023).

**III.    Legal Standard**

An ALJ's decision will be affirmed if it is supported by "substantial evidence," which means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 587 U.S. 97, 139 S. Ct. 1148, 1154 (2019). "[T]he threshold for such evidentiary sufficiency is not high." *Id*. As the Seventh Circuit has made clear, ALJs are "subject to only the most minimal of articulation requirements" and "need not address every piece or category of evidence identified by a claimant, fully summarize the record, or cite support for every proposition or chain of reasoning." *Warnell v. O'Malley*, 97 F.4th 1050, 1053 (7th Cir. 2024). "All we require is that ALJs provide an explanation for how the evidence leads to their conclusions that is sufficient to allow us, as a reviewing court, to assess the validity of the agency's ultimate findings and afford the appellant meaningful judicial review." *Id*. at 1054; *see Thorlton v. King*, 127 F.4th 1078, 1080 (7th Cir. 2025) (reiterating that Seventh Circuit "review proceeds with a light touch—not holding ALJs to an overly demanding evidentiary standard and in turn reinforcing that claimants bear the affirmative burden of proving their disability"). The Seventh Circuit has clarified that district courts, on review of ALJ decisions in Social Security appeals, are subject to a similar minimal articulation requirement: "A district (or magistrate) judge need only supply the parties . . . with enough information to follow the material reasoning underpinning a decision." *Morales v. O'Malley*, 103 F.4th 469, 471 (7th Cir. 2024). The district court's review of the ALJ's opinion "will not reweigh the evidence, resolve debatable evidentiary conflicts, determine credibility, or substitute its judgment for the ALJ's determination." *Chavez v. O'Malley*, 96 F.4th 1016, 1021 (7th Cir. 2024) (internal quotations omitted).

IV.     Analysis

Plaintiff contends the ALJ erred in four aspects in rendering the decision: (1) by failing to evaluate adequately the December 2023 report of treating neurologist Dr. Gene O. Neri, M.D. ("Dr. Neri"); (2) by failing to evaluate adequately Plaintiff's neurological impairments; (3) by failing to support the RFC of frequent fine and gross manipulation with substantial evidence; and (4) by failing to consider the combined effect of all of Plaintiff's severe and non-severe impairments. (D.E. 17: Pl. Mem. in Supp. of Reversing or Remanding the Commissioner's Decision ("Pl. Mem.") at 7-14.)

      A.      **The ALJ's Decision To Reject the Report of Plaintiff's Treating Neurologist Was Supported By Substantial Evidence.**

In his memorandum, Plaintiff contends the ALJ erred by finding unpersuasive the December 2023 report of Plaintiff's treating neurologist, Dr. Neri. (Pl. Mem. at 7-9.) The regulations define a medical opinion as "a statement from a medical source about what you can still do despite your impairment(s) and whether you have one or more impairment-related limitations or restrictions." 20 C.F.R. § 404.1513(a)(2). Generally, under 20 C.F.R. § 404.1520c, the most important factors for the ALJ to evaluate in determining the persuasiveness of medical opinion evidence are the supportability and consistency both internally and with the record as a whole. The ALJ must also consider the treating practitioner's relationship with the claimant, specialization, as well as other factors, but an explanation of the ALJ's consideration of these additional factors does not need to be presented within the ALJ's opinion. 20 C.F.R. § 404.1520c(b)(2).

In his report from December 21, 2023 (R. 706-07), Dr. Neri's opinion did not set forth specific limitations for Plaintiff, as noted by both the ALJ and Plaintiff himself. (*See* R. 37; Pl. Mem. at 8.) However, Dr. Neri noted that during Plaintiff's August 23, 2022, visit, Plaintiff

4

"complained of right sciatica, right cervical radiculopathy, and that the chronic pain was increasing the insomnia and reducing the restorative sleep substantially." (R. 707.) Dr. Neri also stated Plaintiff "[h]as also developed drowsiness and extreme fatigue, likely secondary to the chronic pain." (*Id.*) For that visit, Dr. Neri concluded that Plaintiff's diagnoses were "cervical and lumbar radiculopathy, trigeminal neuralgia, and autonomic neuropathy," and that "[t]hese symptoms have persisted until the present time." (R. 707; *see* R. 693.) Dr. Neri concluded his December 21, 2023, report by saying, "[Plaintiff] has seen many other doctors . . . and he states that most of them have recommended disability. It is rather obvious that [Plaintiff] is unable to work in a competitive environment at this time, and that disability is a logical conclusion." (R. 707.) As to Plaintiff's mental status, Dr. Neri acknowledged that he did not have the results of the neuropsychological evaluation of Plaintiff while in Mexico,[5] but that "it was evident that his mental status was also deteriorating as a result of the poor sleep and chronic pain." (*Id.*)

The ALJ assessed the treatment notes of Dr. Neri as "handwritten and essentially illegible." (R. 26.) The ALJ explained that "[b]ased on what could be deciphered, the claimant, on occasion, reported decreased sensation on his ride [sic] side as well as chronic pain, fatigue, and issues with balance. He also exhibited an antalgic gait." (*Id.*) In evaluating specific treatment records, the ALJ noted that "[i]n May 2022, the claimant's neurologist stated the claimant 'cannot work at this time,' and, in December 2023, the neurologist reported the claimant 'continues to deteriorate in function.'" (*Id.*)

---

[5] Dr. Neri does not explain why he did not have the results of Plaintiff's December 18, 2023, evaluation of Plaintiff by his psychiatrist in Mexico, Dr. Hector Alejandro Chanes Velasco ("Dr. Velasco"). The Court notes from review of the record that Dr. Velasco's evaluation states, "My note is not valid in legal proceedings that take place outside of Mexico, it is only informative for the patient." (R. 705.) Regardless, the ALJ did address this December 18, 2023, evaluation of Plaintiff, as discussed further below.

5

In addition, specific to the December 2023 report, the ALJ evaluated the evidence from Dr. Neri as unpersuasive because "Dr. Neri fails to provide any specific work-related functional limitations due to the claimant's impairments. Further, Dr. Neri's return-to-work restrictions are vague, as he does not provide a timeframe and/or explanation for these limitations, and he sets out no guidelines for reassessment." (R. 37.) Here, Plaintiff argues the ALJ should have credited Dr. Neri's statements "that 'it is rather obvious that (Plaintiff) is unable to work in a competitive environment at this time,' and that 'it (is) evident that his mental status was also deteriorating as a result of his poor sleep and chronic pain.' (R. 706-707)." (Pl. Mem. at 8.) But Plaintiff's conclusion does *not* obviously follow from the paucity of evidence he presented.

There is an exception "to the articulation requirement [for the factors of supportability and consistency] for statements 'on issues reserved to the Commissioner.'" *Jones v. Dudek*, 134 F.4th 991, 994 (7th Cir. 2025), citing 20 C.F.R. §§ 404.1520b(c)(3), 416.920b(c)(3). Statements on issues reserved to the Commissioner include "any statements that would direct the ALJ's determination or decision" that a Plaintiff is or is not disabled, including statements that a Plaintiff "[is] or [is] not disabled, blind, able to work, or able to perform regular or continuing work." *Id.* (internal quotations omitted). The ALJ "will not provide any analysis" of such statements, "even if they come in the form of medical opinions." *Id.* In other words, because Dr. Neri did not opine limitations for Plaintiff, and he articulated statements on issues reserved to the Commissioner, Dr. Neri's report does not qualify as a medical opinion under the relevant regulations. Whether or not Plaintiff is capable of work or is disabled is a decision reserved for the Commissioner, not Plaintiff's doctor. *Langley v. O'Malley*, No. 22-3008, 2024 WL 3649021, at *5, (7th Cir. Aug. 5, 2024).

6

In view of the regulations pertaining to statements on issues reserved to the Commissioner, *see* 20 C.F.R. §§ 404.1520b(c)(3), 416.920b(c)(3), and in view of the regulation defining medical opinions, *see* 20 C.F.R. § 404.1513(a)(2), the Court finds that the ALJ's decision to assess as unpersuasive the report of Dr. Neri, citing it as "vague" and lacking "any specific work-related functional limitations" (R. 37), was supported by substantial evidence. Dr. Neri's statements that Plaintiff is disabled fit securely into the regulatory definition of statements on issues reserved to the Commissioner. *Jones*, 134 F.4th at 994. But even if the evidence from Dr. Neri was a medical opinion, the ALJ did address the assessments of the mental health professional Plaintiff had seen separately, as discussed in section IV.D below, and the ALJ's decision not to discuss Dr. Neri's stray assessment of Plaintiff's mental status was supported by substantial evidence because Dr. Neri admitted he had not reviewed Plaintiff's evaluation from his psychiatrist in Mexico.

Accordingly, the ALJ's assessment of Dr. Neri's report as unpersuasive, and the ALJ's decision to not to provide analysis on Dr. Neri's statements on issues reserved to the Commissioner, was supported by substantial evidence.

**B.     The ALJ's Assessment of Plaintiff's Neurological Impairments Was Supported By Substantial Evidence.**

Plaintiff argues the ALJ "essentially ignored" Plaintiff's neurological impairments because the ALJ did not find any "severe" neurological impairments. (Pl. Mem. at 10-11.) Once again, Plaintiff turns to the December 2023 report of Dr. Neri to support his contention that he does, in fact, have severe neurological impairments. (*Id.*) However, the Court's review of the ALJ's opinion "will not reweigh the evidence, resolve debatable evidentiary conflicts, determine credibility, or substitute its judgment for the ALJ's determination." *Chavez*, 96 F.4th at 1021 (internal quotations omitted).

7

In Social Security cases, "the ALJ has a special duty to fully and fairly develop the record and to assure that the claimant's interests are considered." *Amy H. v. Berryhill*, No. 17 CV 4559, 2019 WL 2076325, at *5 (N.D. Ill. May 10, 2019) (citation omitted). This duty is further triggered "when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence." *Id.* (citation omitted). Typically, an ALJ has a duty to solicit additional information to flesh out an opinion for which the medical support is not readily discernable. *Id.* (citations omitted). Some courts have stated that an ALJ confronted with indecipherable doctors' notes should contact those doctors for clarification. *Sabita O. v. Saul*, No. 19 CV 58822, 2021 WL 1691947, at *3, citing *Lauren J. v. Saul*, No. 17 CV 8138, 2019 WL 5864833, at *6 n.3 (N.D. Ill. Nov. 7, 2019). But in at least one instance, "the Seventh Circuit held that an ALJ is not required to accept a physician's opinion where the notes in support were of such poor quality that they were impossible to decipher." *Id.*, citing *Gildon v. Astrue*, 260 F. App'x 927, 929 (7th Cir. 2008).

Dr. Neri reported he had treated Plaintiff as early as October 2017. (R. 706.) The record in this case reveals at least three record requests submitted to Dr. Neri's office in support of Plaintiff's application for DIB. (R. 610, 638, 749.) The records furnished by Dr. Neri's office, exclusive of the requests themselves and the December 2023 report, amount to 15 total pages. (R. 611-19, 639-41, 693, 750-51.) Each page within the batch of 15 encompassed an individual neurological exam, spanning from November 2019 to December 2023. (R. 611-19, 639-41, 693, 750-51.) Two of those pages (R. 750-51) were only submitted to the ALJ after Plaintiff's counsel requested to hold the record open for an additional 14 days following the January 17, 2024, hearing. (R. 51-52.) The ALJ reviewed these records and admitted them into the evidence of record. (R. 15.) The record is otherwise silent on Plaintiff's treatment with Dr. Neri from October 2017 to October 2019. (*See* R. 706.)

8

The ALJ assessed the 15 pages of treatment notes from Dr. Neri as "handwritten and essentially illegible." (R. 26.) Recall that the ALJ did explain his analysis was based on "what could be deciphered . . . ." (*Id.*) In his brief, Plaintiff concedes that, "[t]he ALJ states (rightly so) that many of Dr. Neri's actual office treatment notes are 'essentially illegible,'" and Plaintiff does not point to any specific neurological records the ALJ ignored. (Pl. Mem. at 10-11.) Instead, he argues that "[d]espite all of [Plaintiff's] neurological conditions, for which Plaintiff regularly treats with a neurologist, the ALJ finds that Plaintiff's only severe impairments are musculoskeletal (and not nerve related)." (*Id.* at 11.) Plaintiff further concedes that Dr. Neri only "somewhat 'cured' his bad handwriting" with his December 2023 report. (*Id.* at 10.)

Plaintiff does not report treating with any additional neurologists, and therefore, the only evidence *available* to the ALJ for Plaintiff's neurological impairments consisted of 15 "essentially illegible" pages of treatment records—purporting to span over six years of treatment—and two pages of a report containing statements on issues reserved to the Commissioner with zero assessment of what Plaintiff could still do despite his impairments. Plaintiff bore the burden of proving his disability through objective medical evidence, *see Thorlton*, 127 F.4th at 1080, and he availed himself of the opportunity to submit additional evidence for the record after the January 2024 hearing. (R. 15, 51-52.) Plaintiff is essentially asking this Court to weigh the evidence differently than the ALJ did, and this Court declines to do so. *See Chavez*, 96 F.4th at 1021.

Accordingly, the Court finds the ALJ's assessment of Plaintiff's neurological impairments as non-severe was supported by substantial evidence.

    **C.    The RFC of Plaintiff's Bilateral Upper Extremities As Assessed By the ALJ Was Supported By Substantial Evidence.**

Next, Plaintiff argues "[t]he ALJ's finding that Plaintiff could 'frequently,' as opposed to 'occasionally,' use his bilateral upper extremities for fine and gross manipulation with his upper

9

extremities is not supported by substantial evidence." (Pl. Mem. at 11.) In this section of his argument, Plaintiff first re-hashes the ALJ's treatment of the December 2023 report and 15 pages of treatment notes from Dr. Neri, which the Court discussed at length above and will not set forth again here. But unlike his arguments pertaining to Dr. Neri, where Plaintiff cites no specific treatment notes, Plaintiff asserts that "the ALJ does not discuss August 5, 2023 imaging of the shoulder which showed significant findings including 'significant degenerative process in the glenohumeral joint,' inflammatory changes in the labrum, a possible SLAP-type lesion, and tenosynovitis. (R. 685/Exhibit 12F, p. 17)." (*Id.* at 12.) Just two paragraphs later, Plaintiff admits the ALJ did address the August 2023 imaging but argues that the ALJ committed error "by not finding any severe shoulder impairment despite imaging (that he did mention in his decision) that confirmed the presence of such an impairment." (*Id.*)

In fact, the ALJ addressed the imaging, stating that "an x-ray of the claimant's right shoulder revealed bone infarction, but also normal joint relationships." (R. 26.) And the ALJ's assessment of Plaintiff's right shoulder impairment did not stop there. The ALJ discussed that: "the claimant testified to numbness and weakness in his hands and arms, inhibiting his ability to hold or manipulate objects (e.g., hold a cup of coffee, open a jar, button shirts, type on a computer or iPhone). However, . . . the objective medical evidence indicates the claimant is not as limited as alleged." (R. 28.) The ALJ reviewed the objective medical evidence as to Plaintiff's bilateral upper extremities, "including imaging results; the claimant's course of minimal treatment; and the examination findings from the October 2022 physical consultative examination," (R. 29) as follows:

- "Despite an alleged onset date of September 2020, the claimant did not begin to complain of limitations caused by right-sided body pain (specifically, his right shoulder) until 2022 (see e.g., 5F/1; 20F/2). The record shows the claimant endorsed decreased sensation and chronic pain on his right side (14F), and, upon

- exam, the claimant occasionally demonstrated reduced range of motion in right shoulder flexion, abduction, and internal/external rotation (5F/5). Further, the claimant exhibited reduced grip/pinch strength, leading to 'some difficulty' with grasping/manipulating objects (5F/3)." (R. 28.)

- "[D]uring the October 2022 physical consultative examination, the claimant had difficulty with turning a doorknob, squeezing blood pressure cuff bulb, manipulating buttons, and tying shoelaces (5F/8). However, the claimant experienced no difficulty with picking up coins, holding a cup of coffee, picking up pens, and manipulating zippers (Id.). Further, upon exam, the claimant exhibited 5/5 muscle strength in his left upper extremity and only slight abnormal muscle strength in his right upper extremity (5F/3). The claimant was also able to oppose/stretch his bilateral fingers to make a full fist (Id.)." (R. 28.)

Again, ALJs are "subject to only the most minimal of articulation requirements" and "need not address every piece or category of evidence identified by a claimant, fully summarize the record, or cite support for every proposition or chain of reasoning." *Warnell*, 97 F.4th at 1053. Contrary to Plaintiff's assertion, the ALJ discussed the shoulder imaging (R. 26, 28, 32) as well as the other objective medical evidence within the record, including the consultants' opinions limiting Plaintiff to frequent reaching in all directions and frequent fine and gross manipulations. (R. 28-29, 32, 34.) The ALJ's review of the entire record and the additional examples in the ALJ's opinion reveal that the ALJ considered Dr. Neri's treatment notes (such as decreased sensation on his right side (R. 26)), the notes of Plaintiff's other treaters, the consultative examination forms completed for Plaintiff, and the remainder of the record. *See Bakke v. Kijakazi*, 62 F.4th 1061, 1068 (7th Cir. 2023) (finding the ALJ met the consistency prong by evaluating claimant's subjective statements against the treating physician records and the remainder of medical records). While Plaintiff attempts to disguise his request for this Court to reweigh evidence through a half-hearted, and later retracted, argument that the ALJ ignored imaging evidence, the Court once again declines the invitation to reweigh. *See Chavez*, 96 F.4th at 1021.

11

Accordingly, the ALJ's assessment of Plaintiff's RFC as to his bilateral upper extremities was supported by substantial evidence.

### D. The ALJ's Consideration of the Combined Effect of Plaintiff's Severe and Non-Severe Impairments Was Supported By Substantial Evidence.

Plaintiff's sole remaining argument is that the ALJ "failed to consider the combined effect of all of Plaintiff's severe and non-severe impairments on his residual functional capacity." (Pl. Mem. at 13.) Yet this fourth argument appears simply to be another attempt to put the December 2023 report of Dr. Neri at issue: "Since the ALJ did not offer much comment on Dr. Neri's detailed report (R. 37), one can assume that he did not consider Dr. Neri's comments on the effects that Plaintiff's ongoing chronic pain was having on his ability to sleep, his extreme fatigue, and his deteriorating mental status." (*Id.*)

Interestingly, Plaintiff points to Dr. Neri, his neurologist, over his actual psychiatrist, Dr. Hector Alejandro Chanes Velasco ("Dr. Velasco"), in his argument that the ALJ neglected to consider the combined effect of Plaintiff's physical and mental, severe and non-severe impairments. (*Id.* at 14.) The ALJ did in fact find Plaintiff's anxiety to be a severe impairment. (R. 18.) What Plaintiff neglects to mention is that the ALJ devoted almost two single-spaced pages of the decision to the opinions of Plaintiff's psychiatrist, Dr. Velasco. (R. 35-36.) Plaintiff also neglects to mention that despite finding Dr. Velasco's opinions unpersuasive, the ALJ assessed certain specific limitations in the RFC to Plaintiff's benefit. For example, Dr. Velasco's opinion that Plaintiff's depression may make physical reflexes difficult and/or slow the claimant's mental functioning led the ALJ to "limit[ ] the claimant to unskilled work as well as to work that does not require a specific production rate, such as assembly line work." (R. 36.) Additionally, Dr. Velasco's opinion in limiting the claimant to work in non-hazardous environments led the ALJ to

12

assess "no driving at work, no operating moving machinery, no working at unprotected heights, and avoiding concentrated exposure to unguarded hazardous machinery." (R. 36.)

In pointing this Court to the report of Dr. Neri over the opinions of Dr. Velasco, Plaintiff argues, unsuccessfully, that the ALJ should have credited a stray mental health assessment from his neurologist over that of his actual psychiatrist. (*See* Pl. Mem. at 8.) But Dr. Neri himself admitted that he did not have the results of the December 2023 evaluation of Plaintiff while in Mexico (R. 707) – the exact evaluation from Dr. Velasco the ALJ discussed at length, as set forth above.

Overall, each of Plaintiff's four arguments attempts to have this Court reweigh the evidence and substitute the ALJ's determination as to Dr. Neri's December 2023 report. The district court's review of the ALJ's opinion "will not reweigh the evidence, resolve debatable evidentiary conflicts, determine credibility, or substitute its judgment for the ALJ's determination." *Chavez*, 96 F.4th at 1021 (internal quotations omitted).

## CONCLUSION

For the foregoing reasons, the Court denies Plaintiff's memorandum requesting the Court reverse and remand the ALJ's decision (D.E. 17) and grants Defendant's motion for summary judgment (D.E. 20).

**SO ORDERED.**

                                         **ENTER:**

                                         **GABRIEL A. FUENTES**
                                         **United States Magistrate Judge**

**DATED: June 25, 2025**